May it please the Court, Jerry Sims on behalf of Appellants. I'd like to reserve approximately five minutes of my time for rebuttal, and I'll monitor my time accordingly. As virtually all the cases in this area and scholarly commentary point out, one thing we can be sure of, despite our disagreements, is that maritime law, admiralty jurisdiction, and DOJ in particular, are complex, often confusing, and seemingly contradictory. Thus, it's easy to get lost in the details and lose sight of the big picture. And perhaps, to some degree, the briefing on both sides of that has done that in this case. So I want to focus on three main points today that I think should overarch the analysis and form the template. The first one is that no one disputes why DOJ was enacted for one reason and one reason only, which is to provide a remedy under federal maritime law where none previously existed. That's no longer the rule. If the Court has followed the history in the briefing, that no common law remedy under federal maritime law rule originated in the Harrisburg, which was soundly criticized for decades. But it was overruled by the U.S. Supreme Court in the Moraine case in 1970. So there now is a federal common law maritime remedy in federal territorial waters. So the very reason for DOJ's enactment, to provide a remedy where none existed, no longer applies in the zone between 3 and 12 miles, because we have federal rules. So if your client's position is that the Montana remedy is what applies here? It's unclear. There was no choice of law determination on what remedies do apply. At this point, the only certified question we have is whether DOJ did or did not. I understand. And that was the same situation in the TWA case. They decided only the narrow DOJ issue. But if Your Honor's question is whether there are State and or Federal remedies in that zone, if I'm understanding that correctly, there may well be both. And that leads me to what my third point was going to be. I thought State territorial waters only extend for 3 miles except for Texas and Florida. That's correct. But there seems to be a premise that often gets accepted without analysis, that the State jurisdiction extends only to that 3 miles. Now, that's not entirely clear. It often gets said that in the Harrisburg case, the Court said there's no common law remedy for a wrongful death. I'm just mildly curious, and maybe it is off point, about why your client prefers the State and Federal remedies over the dosing remedy. Well, there's a significant difference. What we'll call the error is what we'd call under a wrongful death statute. Under California law and most States' law, it can recover for loss of consortium. Punitives, too, right? I'm sorry? Punitives, too? Yes. But plaintiffs have not pled punitives, so that's a moot point in this case. But there is a significant difference in the loss of consortium. Under the Montana rule as well, you can get punitives? No, I'm saying we're not seeking punitives. There's no issue about punitives in this case. But if I understood your question, what would be the difference in this case and why plaintiffs would prefer the State law is that the primary one I would point out is that the survivors can recover for loss of consortium. And under the Montana Federal rule as well? Yes, under Federal and, of course, wrongful death as well. Okay. But not under DOSHA. But, I mean, this is very complicated. But, you know, in terms of the analysis, whether it's geographic or whether it's 12 miles or 12 miles. But then, subsequently, President Clinton signed something that goes out to 24, right? That was an entirely different issue, Your Honor. That was for the contiguous zone. It had nothing to do with the high seas, death on the high seas. Well, I'm just wondering, can these presidential proclamations, what's the authority that they can override what Congress does, even albeit that Congress does stupid things? Well, they haven't tried to override Congress. There's two questions to that. The first question, I guess, if I'm understanding you as broadly, does the President have the power to issue a proclamation extending U.S. territorial waters? Nobody has seriously disputed that. It was extensively analyzed. But if territorial waters and geographic waters are different, then just extending territorial waters wouldn't necessarily change the scope of a statute, right? I'm not entirely sure I understand you, Your Honor. But if the question is historical. It's historical. But in 19 or 2000 or something, they amended the statute and they put the three miles directly in the statute at that point. Before, it said a marine league, right? So in 2000, after all this water was under the bridge, Congress went back again and put the three miles in. Well, Your Honor, three miles and the marine league are the same. I understand that, but they certainly didn't think it was gone because they specifically put it in. I've never understood you. Well, maybe this is the problem. What is your argument for why the marine league or the three miles is there, but it does not, but in fact, it's 12 miles? Very simply this, and it goes back to my first point. Remember that DOSHA was enacted only to provide a remedy where none existed. Okay. You have to keep that overarching point in mind. But these are all policy arguments. What I want to know is how we throw out of the statute the three miles language. Well, you don't throw it out of the statute. The proclamation moved the marker from 3 to 12. Now, the defendant's argument, which I think is the one you're picking up on, is they say the President doesn't have the authority to change that limit. No, I didn't say that. You just said that's not even in dispute. The question is, this statute says the high seas three miles from whatever, right? Right. Is that the phrase? It says on the high seas, more than a marine league on the high seas. All right. More than a marine league has been changed to three miles. Is that the exact language? Well, anyway, I will find it. But the, anyway, it's on the high seas beyond three nautical miles. Okay. So what argument do you have for saying that it actually means, as I understand it, on the high seas beyond 12 nautical miles? Because the statute has always had the component, as the majority in TWA pointed out, it's tied into the high seas. High seas, in turn, for purposes of maritime accidents and deaths, were always defined as beyond three miles. So the point was to apply it to the high seas. That was the point entirely, because in the Harrisburg, the Court said there's no Federal maritime remedy. But when the Proclamation extended the high seas to 12. What effect is your interpretation giving to the beyond three nautical miles, which was just put in the statute again in 2006? Well, I don't want to concede it was just put in. It sounds like Congress made some determination to reiterate something. They just, as all the, nobody disputes, they simply wanted to clean up archaic language and change Marine League to three miles. There was no substance to that. They disclaimed any substance to it. It was strictly a technical, scientific wording change, if you want to call it that. But. What does it mean if it's washed out by the extension of the territorial waters? It means you then have three zones. You have the three miles and closer, which nobody seems to dispute, that you would have State remedies there, and some Federal remedies if it's navigable waters. You then have three to 12, which would now have under the, excuse me, the Moraine case, which overruled Harrisburg, you now have an entire body of Federal common law for death on the high seas. You might also have State remedies as well. That's a different question. But the point is you clearly have the Federal common law remedies. And then from 12 miles out, you have DOSHA. Now, there's two points that relate here. Once, and I have to emphasize, if DOSHA was enacted for one reason, which was to provide for a remedy on the high seas where there had been no such remedy, and there now is such a remedy, to apply DOSHA to territorial waters is to turn it upside down. It was meant to apply to waters where there was no remedy beyond the territory of the U.S., which at that time was three miles. Now, they want to apply it to territorial waters.  So, Mr. Gershwin, can you explain to me again how your interpretation leads to this three zones? It says occurring on the high seas beyond three nautical miles is where DOSHA applies. Why does that tell you anything about where the Federal common law remedy applies? Because the – it would still be admiralty jurisdiction between 3 and 12. Nobody has disputed that. And the – in the Moraine case, the Court said that there is a Federal – But the beyond three nautical miles in this statute has no role the way you're interpreting it. No. It defined – when it was enacted, it defined where the high seas began. Now. Now. What does it mean? Now, it means that it – this means that the three miles has been changed to 12. That's all that means. So you are reading the beyond three nautical miles out of the statute. You're saying it now means 12. Yes. In practical effect. Have you ever seen a statute read that way? Yes. Because here's the reason. I think what the point – it's the point defendants tried to make. They're saying that the proclamation itself, which set forth the 12-mile limit, had language in itself that said we don't mean to affect any State law. And I think that's what you're picking up on, Your Honor. You're saying – I'm picking up on very basic statutory interpretation rules. It kind of said 12. When the statute says beyond three nautical miles, it means beyond the three nautical miles, unless we have some – unless it's taken out. And you're telling me, no, it doesn't. It means beyond 12 nautical miles. Okay. Here's the reason. The statute was meant to apply to non-territorial waters. Remember that by definition, DOSHA has extraterritorial application and nothing else. It applied to waters beyond three miles because that's where the territory ended when DOSHA was enacted. It was meant to apply to the high seas. The definition of the high seas have now changed to start at 12. So to say that DOSHA – the proclamation can't amend DOSHA, actually that's what defendants are trying to do. They're saying that we will now apply DOSHA to federal territorial waters, which nobody disputes are between three and 12 miles. DOSHA was enacted to apply only to extraterritorial waters, so that's how you would pervert DOSHA and stand it upside down and amend it, is by applying it to federal territorial waters. That's the fundamental – But counsel, I think it turns on the definition of the high seas, and it seems to me that there's been no change in that and that the proclamation was not intended to change that, And DOSHA applies to acts on the high seas. Well, we all agree that DOSHA applies to acts on the high seas. What the high seas meant, everybody agrees, has been unclear. Even – Well, why isn't the most sensible thing to say is that that's why the beyond three nautical miles is there. This statute is essentially defining the high seas as beyond three nautical miles. And that way we don't have to get into whether high seas means low tide or high seas means the territorial waters. This statute says what it means for the purposes of this statute, and that is beyond three nautical miles. But that's when the high seas were that? Well, no, but you're making an assumption that high seas has some external – meaning external to this statute that this statute was bound to respect, as opposed to clarifying that whatever high seas may otherwise mean. In this statute, what it means is beyond three nautical miles. Well, Your Honor, all I can say is the TWA majority disagreed with that interpretation. Yes, they did. And I – They did disagree. The dissent didn't, though, and I actually think the dissent was fairly precise. And, of course, even Justice Sotomayor, though, rejected the defendant's argument that it starts at the low water mark. That's what I'm saying. I don't see why we need to get into that. So can anybody argue here that this is clearly only a one-way kind of case? As I pointed out in my opening brief, reasonable minds here can differ. But the point – But the one thing that you can come up with a way to read the statute that leaves both high seas and beyond three nautical miles in, but you want a way to read the statute that leaves in high seas and takes out the beyond three nautical miles. And that's what I'm – I have a very hard time with on basic statutory interpretation principles. I think the simple reason for that, once again, is the most important principle of statutory interpretation is to effectuate Congress's intent. Now, there are various ways to get there, but the one thing no one disputes is that intent here was to provide a remedy where none existed. In that three to 12-mile zone, now, there are limits. Even if that – I mean, first of all, you know, although I have a certain amount of sympathy for that approach, it's not the one that's being used much these days, number one. But number two, more than that, there have been at least two developments since all of this. One is the enactment of the provision about commercial airlines, and the other is this, you know, 2006 revision, neither of which – they could, when they were dealing with the commercial airline problem, just have rewritten the statute, but they didn't choose to do that. Instead, they wrote a limited provision having to do with commercial airlines. They didn't, Your Honor, and as I pointed out in my brief, legislators approach things entirely differently from courts. They don't have the – we may call it purity of purpose, the intellectual rigor. They're trying to achieve a practical effort. It's give and take. It's political compromise. What doesn't go on here? And they had a crisis on their hands with the TLB 800 crash, certain congressmen and senators wanting relief for their constituents. They did what they could. That doesn't mean they made any determination about anything else. I'd like to reserve a little time. Thank you very much. Good morning, Your Honor. May it please the Court. My name is James Hunt, and I represent the Sikorsky Defendants. In court, our lead counsel for all other defendants on this case, the judge's decision below affected all of them, applied to all of us, basically. And I've been selected to attempt to make our presentation. I think, Judge Berzon, you're quite right. The plaintiffs basically read the three-nautical-mile requirement out of DOSA, rather, as it exists. If Congress wanted to make DOSA applicable, 12-nautical-miles for everything, they could have done that. Well, they can do it after we decide this case, too, can't they? They certainly could, Your Honor. They could do it any time they wish. At the time the 2000 amendments were considered, Congress did consider revamping the whole thing in all sorts of ways, and they chose not to do it. They chose to do what they did. Let me ask you a question. Why couldn't both be true? Why couldn't it be that DOSA applies but that the federal common law cause of action also applies? Because the Supreme Court said that DOSA basically preempts everything else, Your Honor, including other federal remedies. I'm sorry? Including other federal remedies. Including moraine common law maritime. Which case is that? You know what? There are so many of them, Your Honor. Well, that seems a little key, doesn't it? I'm sorry? It seems pretty key. Well, it's, I mean, if the federal remedy under common law is there, but there's no question the Supreme Court has found that DOSA is supreme. As Mr. Sims said, it wasn't until 1970 in the moraine case that a federal cause of action in maritime law for wrongful death was created. Before that, there had been none. There had been DOSA. And that's all. Well, I understand that. But it's not, well, I really need to know what case that is. So I'd appreciate, because logically speaking, it's not at all unusual to have two remedies applying in the same place, including two federal remedies. I think the Dooley case may be the one, Your Honor. I'm not sure. The Dooley v. K.A.L. case, the Supreme Court case. I think that may be the one that basically says DOSA trumps everything. Well, okay, so if we held, and I'm asking this question hypothetically, that DOSA does not apply to the area between 3 and 12 nautical miles from U.S. shores, what remedies would apply to wrongful deaths off the coast of states comprising the Ninth Circuit? Well, in this case, if DOSA did not apply, presumably federal maritime law would apply. The plaintiff says in their brief that California law would apply. I don't think that's probably not correct. I'm not sure. That hasn't been really, we haven't reached that point in the case. However, if the plaintiff's point of view prevails, there will be situations in which there could be accidents, we put this in our brief, in which there will be, in theory, no cause of action, no source of recovery. If you're talking about an airplane taking off, as an example, from LAX, that does not meet executive jet standards, it doesn't have a maritime nexus, and it crashes between 3 and 12 nautical miles, in the plaintiff's theory, there is no cause of action. You're beyond California waters. You haven't reached DOSA waters, according to them. You're in no man's land, or no man's water, I suppose. But it makes no sense. Just because I'm curious, I gather that the Texas and Florida have a different go out 9 miles, or something like that. It's a free marine reach. So how does DOSA apply to that? The LeBloom case in the Southern District of Texas addresses that in some detail. Basically, Texas remedies, in that case, applied out to three marine leagues, which is a little over 10 miles. The question in that case is a fact question, and the judge sent it back, or rather denied in part for that reason. And that's because an exception to it? You see, if this was totally preemptive, then presumably it would cut off at 3 miles. As to Texas and Florida. Well, there's a savings clause in DOSA, Your Honor. The current provision is, I think, 308, if I remember correctly, or 307, I'm not sure which it is. There is a savings clause in, I think it's 308, which basically says that DOSA, and this was the prime concern of the Congress back in 1915 and still today, that DOSA not impinge upon or preempt state law remedies. The intent of the Congress back in 1915 was that where state law remedies stopped, DOSA would begin. Does your argument depend on any particular interpretation of the word high seas? You do make an extensive argument in your brief that high seas means the low water mark, and that seems sort of maybe yes, maybe no. I mean, there's also a lot of law that says that's not what it means. It means territorial waters. Does it make a difference? Your Honor, it does not to me because Congress has been crystal clear, and the current statute is the one we're talking about. Congress was crystal clear that they're talking, that this case is covered. In the commercial aviation exception, they basically provide that DOSA will apply beyond 12 nautical miles in the 2000 amendment, and they say short of 12 nautical miles, DOSA will not apply at all to a commercial aviation accident. Short of 12 nautical miles on the high seas, Congress is specifically calling out that that area is high seas in their legislative point of view. But now a vessel would be treated differently than a commercial airline. I'm sorry, Your Honor. A vessel would be different than a commercial airline. It's a special exception only for commercial aviation. For aircraft like TWA 800, which is what they had in mind. But if you're talking about a military crash or general aviation crash, noncommercial aviation or a vessel or a scuba diver, there are some cases in this circuit involving scuba divers, as an example, or boaters, just recreational boaters. Then we're talking about 3 nautical miles or state remedies. Your Honor, there's one point. I hadn't planned on saying this, but the whole definition of high seas, I mean, there are different definitions. I would argue that the three Supreme Court cases that the plaintiffs point to, the Scotland, the Hamilton, and Lebergone, it was a throwaway line almost. All of those incidents involved collisions. They were all in the open ocean, definitely out of state territorial waters. I would look to three other Supreme Court cases. The Amistad case. You just tell me it doesn't matter. I'm sorry? You just tell me it all doesn't matter. It really doesn't matter, Your Honor. I think we win either way, truthfully. The plaintiff's argument is a very metaphysical argument. You have to, you know, they basically are claiming that in the mind of Congress, when it passed DOSA, was the possibility or the ability in the President to change it at will. Well, is there anything in the record that suggests Congress intended to delegate to the executive branch the power to determine the scope of DOSA?  There's absolutely nothing. In fact, quite the opposite. Congress was very, there's a large legislative history here, a lot of debate by the congressmen back in the teens before Congress was, before DOSA was actually enacted in 1920, and it's very clear that the main thing, the main focus for them was to preserve state law remedies. Congressman Bryan did not want to make, have any chance that Puget Sound in Washington was going to be considered high seas for DOSA purposes. The other congressmen were worried about the Great Lakes, et cetera. It is duly, Your Honor, by the way, just to go back to that. This is what we call call a friend. Yes, it is, Your Honor. Thank you very much. A lifeline. Congress provided the exclusive recovery for deaths that occur in the high seas. That was the KAL shoot-down case, Your Honor. And if for whatever reason DOSA hadn't applied, of course, federal maritime law would have applied in that case, or could have applied, I suppose. It's a big choice of law question. Who knows? The one point, just a small point, but something that's very significant. The 2006 amendments, I counted them. Congress made 21 changes. They didn't change substance. They didn't change substance, but they changed wording for clarity, to eliminate unnecessary words, et cetera. And one of the changes is to 3302, which is the section we're talking about that contains the on the high seas beyond three nautical miles language. They had previously been beyond one marine league, and they specifically changed that. It makes no sense. It makes no sense to think that Congress is changing something that is irrelevant. It doesn't matter. It's crazy. And the same thing, of course, if the plaintiffs were right, they would have done that twice. They would have done it in 2000, when they enacted the amendments at that time, and they would have also done it in 2006, when they changed that specific language from marine league to nautical miles. It makes no sense at all. Your Honor, I was prepared to go through the history. I would say there's one key point regarding the definition of the high seas that I think should be kept in mind. Two key points, I'll say. Number one, the original dose that Congress had before it, that letter, which is in our brief, from the Assistant Attorney General, answering Congressman Bryan's question, what does high seas mean? And he gave him four contemporary sources, Bouvier's Law Dictionary, Black's Law Dictionary, the U.S. Supreme Court case of Ross v. McIntyre, 1891, the U.S. Supreme Court case of U.S. v. Rogers, 1893. Rogers' case, in particular, is encyclopedic in its definition of what high seas meant to the court. That's one point. Another point is, in 1958, the Convention on the Territorial Seas and the Contiguous Zone was enacted. And that changed some of these definitions. So pre-'58, there was one set of, I would argue, that high seas had a somewhat different meaning, although sometimes it was different in different contexts. In fact, the Attorney General, when answering Congressman Bryan's question in 1914, told him that, that there have been different contexts. He referred to the English view. He referred to the American view. And even within some of the U.S. cases, you see some differences. But to me, I agree with Mr. Sims wholeheartedly when he says this is a question of what Congress's intent was, and I think that is crystal clear. It was clear in 1920. It was clear in 2000. It was clear in 2006, particularly on this point, because they did have their fingerprints on this, and they knew what they were about. The legislative history, the recent legislative history shows that they did consider revamping this thing from stem to stern. Your Honor, I have nothing else to assert. Judge Fletcher? No. Thank you very much. I don't really have any points to make in rebuttal in my limited time. I have a question. The commercial aviation accident provision that was added in, what, 2000? Right after the TWA decision, yes. It says, within 12 nautical miles, this chapter does not apply if the death resulted from a commercial aviation accident occurring on the high seas 12 nautical miles or less from the shore of the United States. Now, in your interpretation, that's a nonsensical sentence, right? No, because when they did that, the high seas began at 12 miles. Right. So, therefore, how could you have a death resulting on the high seas 12 nautical miles or less? It wouldn't be the high seas. It doesn't read well. You're right. Well, that's because it doesn't. Isn't that possible because they don't mean that? Well, they didn't address it for the noncommercial, we know. And how often have we struggled with inartful wording? I'd like to give the Court a citation to answer a question if it will help it. I think both of the judges asked about possible state remedies, and I don't want to argue that, but to guide you in that direction. No, I was actually asking something else, and I gather there's an answer to it. I don't know if it's a state remedy. And I just wanted to point out there may be state remedies. My opponent said there's no possibility of a state wrongful death remedy. That wasn't decided. It's not the certified question. But if you look at the Hamilton case by the U.S. Supreme Court, they specifically said you could apply a state wrongful death statute anywhere. In fact, just so the Court may understand. But your view is, I gather, that if DOSA applies, then you can't. If DOSA applies, cannot. But I thought there was a question about what. And you agree that if DOSA applies, you can't have a moraine remedy either? No, I'm saying they can't have state remedies. I know. What about a moraine? Is it true that Dooley holds that you cannot have both a moraine remedy and a DOSA remedy in the same place? I'm not sure that's entirely resolved. I think it probably does, but I don't think it's entirely clear. But to respond to the – I thought there was a concern about whether there might also be state wrongful death remedies in that what they're calling no man's land, and they're assuming that, well, they just can't have them. It's not totally logical that a statute that was passed at the time that there were no Federal remedies preempts the Federal remedy. I mean, they had no reason to be preempting any Federal remedy. There wasn't one. I'm talking about the State. I'm trying to respond to their comment that there can't be a State remedy. I'm giving you a lifeline on a different point, which is it isn't at all clear to me that that the Federal remedy, unless Dooley sets it flat out, that the Federal remedy is actually gone. No, I don't think it does what I'm saying. You can read Dooley. I don't think it clearly disposes of the Federal remedy. I'm agreeing with you. But they're just positing it as an assumption that there can be no State remedy, and they call that this no man's land. We appreciate their solicitude for plaintiffs, although we're a little suspicious of that. But what I'm saying is if you look in the Hamilton case, just as Holmes pointed out, that a State wrongful death statute can apply anywhere. Now, obviously not when Docio applies, but in fact, he says, it would not seem to matter whether the accident occurred near shore or in mid-ocean. And then if you look at the Yamaha case more recently from the MSC. But none of this is before us, right? You can go back to the district court argument. No, I was just trying to – I thought there was a question I was trying to answer. There was a question. But I mean, at this point, if there's an open question, it's an open question. You can deal with it. Okay. Okay. Then I'm not submitting it. Thank you very much. Thank you all for your interesting arguments in an interesting case. The case of Hellman v. Alcoa Globe Fasteners is submitted, and we are in recess until tomorrow. Thank you. All rise. Thank you.
judges: Fletcher B. , Berzon, Callahan